UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60423-CIV-COHN/SELTZER

UNITED STATES OF AMERICA,

     Plaintiff,

v.

FOTIOS GKANIOS, a/k/a Frank Gkanios,

     Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss [DE 30],

Plaintiff's Motion for Summary Judgment [DE 56], and Defendant's Motion to Exclude

Plaintiff's Expert Testimony or Limit Expert Testimony [DE 57].  The Court has carefully

reviewed these motions, all related filings, and the record in this case, and the Court is

otherwise fully advised in the premises.

**I.    Background**

    **A.    Material Facts**[1]

        **1.    Defendant's Criminal History**

Defendant Fotios Gkanios, a/k/a Frank Gkanios, was born in Greece on

November 16, 1952.  In 1971, Gkanios moved to the United States.  On July 11, 1978,

_____

[1]  The facts recited herein are based on the parties' Statements of Material Facts
and the Court's review of the record.  See DE 56-1; DE 64-1; S.D. Fla. L.R. 56.1(b).
Some of the facts addressed by the parties, especially those concerning the details of
Gkanios's naturalization process, are not directly relevant to the Court's analysis of the
pending motions and are therefore summarized or omitted here.

Gkanios married Marie De Simone in Yonkers, New York.  At the time of their marriage, Ms. De Simone had two children, a son and a daughter, from a previous relationship.

On June 26, 1991, Gkanios was indicted in Westchester County, New York, for raping and sodomizing Ms. De Simone's daughter, who was less than fourteen years old when these acts occurred.  The indictment alleged that Gkanios committed these crimes on July 6, July 7, and September 8, 1986.  On April 14, 1992, Gkanios pleaded guilty to the charged crimes of first and second degree rape and first and second degree sodomy, admitting the alleged criminal acts in open court.  On June 22, 1992, the Westchester County Court sentenced Gkanios to a prison term of two to six years. After Gkanios unsuccessfully moved to withdraw his guilty plea, Gkanios appealed his convictions and sentence to the Supreme Court of New York, Appellate Division. On December 6, 1993, the Appellate Division affirmed Gkanios's convictions and prison sentence.[2]  The Appellate Division rejected Gkanios's argument that he did not knowingly and voluntarily enter his guilty plea, upholding the trial court's denial of Gkanios's motion to withdraw his plea.

A few months before his Westchester County indictment, on March 15, 1991, Gkanios was separately indicted in Putnam County, New York, for raping and sexual abusing Ms. De Simone's daughter, who was less than seventeen years old at the time. According to the indictment, these crimes occurred between July and August 1987 and again between October and November 1987.  Following a trial, a jury convicted Gkanios of one count of third degree rape, apparently acquitting him of the other charges.

_____

[2]  The appellate court vacated a $10,000 restitution award imposed by the trial court, finding that the victim had not incurred any out-of-pocket costs.

On February 6, 1992, the Putnam County Court sentenced Gkanios to one-and-a-third to four years' imprisonment.  On December 20, 1993, the Appellate Division affirmed Gkanios's conviction and sentence, holding that the evidence was sufficient to prove Gkanios's guilt beyond a reasonable doubt and that the jury's verdict was not against the weight of the evidence.  As a result of this conviction, Gkanios served four years at the Cayunga Correctional Facility in New York.

### 2.    Defendant's Naturalization

On September 14, 1983, Gkanios applied for Lawful Permanent Resident Status in the United States.  About five years later, Gkanios applied for naturalization as the spouse of a United States citizen.  Specifically, on August 25, 1988, Gkanios filed a Form N-400, Application to File Petition for Naturalization ("Application"), with the New York District Office of the Immigration and Naturalization Service ("INS").  On November 22, 1988, an INS officer interviewed Gkanios concerning his Application.  The parties dispute (1) whether Gkanios completed the Application himself, or whether Ms. De Simone completed it for him because he did not fully understand English; and (2) whether the INS officer placed Gkanios under oath and verified his answers to each question on the Application.  However, it is undisputed that during the application process, Gkanios did not disclose any of the sexual crimes for which he was later convicted and imprisoned.  In particular, Question 28(a) of the Application asked, "Have you ever . . . knowingly committed any crime for which you have not been arrested?"  In response to that question, the "No" box is checked on Gkanios's Application.  Gkanios signed the Application, thereby certifying that its contents were true and correct.

Also on November 22, 1988, as part of the naturalization process, Gkanios signed a Petition for Naturalization in the Putnam County Court.  Among other assertions, Item 12 of that Petition represented that Gkanios had been, "during all the periods required by law, a person of good moral character."  Further, Item 15 affirmed that Gkanios knew "the contents of [the] petition for naturalization subscribed by [him], and that the same [were] true to the best of [his] knowledge and belief."

The INS subsequently approved Gkanios's naturalization application.  On June 2, 1989, Gkanios was admitted to United States citizenship, was administered the oath of allegiance, and was issued Certificate of Naturalization No. 12430129.

**B.**   **Procedural History**

On March 7, 2012, the United States brought this action seeking to revoke the order admitting Gkanios to citizenship and to cancel his certificate of naturalization. See DE 1; 8 U.S.C. § 1451(a) (authorizing proceedings to revoke naturalized citizenship that was procured illegally or by concealment of material fact or willful misrepresentation).[3]  The Government's Complaint pleads four counts alleging the following grounds for revoking Gkanios's naturalization:

(1)   Gkanios lacked the good moral character required to naturalize because during the relevant statutory period, he had committed crimes involving moral turpitude—the sexual offenses against Ms. De Simone's minor daughter, for which he was later convicted;

(2)   Gkanios lacked the necessary good moral character because he had committed unlawful acts that adversely reflected on his moral character—again, the rape and sodomy of his underage stepdaughter;

---

[3]  As required by § 1451(a), the Government's Complaint is accompanied by an Affidavit of Good Cause.  See DE 1-3.

(3)     Gkanios lacked good moral character because, for the purpose of obtaining an immigration benefit, he falsely testified to the INS officer that he had not knowingly committed a crime for which he had not been arrested; and

(4)     Gkanios willfully misrepresented, both on the Application and during his INS interview, that he had not knowingly committed a crime for which he had not been arrested, thereby concealing his multiple sex offenses against his stepdaughter.

On May 21, 2012, Gkanios filed a *pro se* Answer, along with a Motion to Dismiss.

See DE 17 ("First Dismissal Motion").  On July 13, 2012, the Court denied Gkanios's

First Dismissal Motion, finding that his arguments lacked merit.  See DE 27.

On July 27, 2012, Gkanios—now represented by counsel—filed his present

Motion to Dismiss.  See DE 30 ("Second Dismissal Motion").  In the Second Dismissal

Motion, Gkanios argues that due process bars the Government's claims because of the

twenty-year delay between Gkanios's criminal convictions and the filing of this action.

See id.  Gkanios also filed an Amended Answer, denying the Government's alleged

grounds for revoking his naturalization.  See DE 32.  Further, the Amended Answer

pleads several affirmative defenses, including that the Government's claims are barred

by laches, limitations, and prejudicial delay in bringing the claims.  See id. at 16.  On

October 15, 2012, the United States filed its Motion for Summary Judgment, asserting

that the record evidence conclusively proves the Government's alleged grounds for

revoking Gkanios's naturalization.  See DE 56.  On the same date, Gkanios filed his

Motion to Exclude Plaintiff's Expert Testimony or Limit Expert Testimony.  See DE 57.

That motion seeks to preclude the Government from offering certain expert testimony

regarding the procedures that the INS followed in connection with Gkanios's

naturalization application and interview.  All of the pending motions are now fully briefed

and ripe for decision.

## II.      Discussion

### A.      Defendant's Motion to Dismiss

Gkanios's Second Dismissal Motion purports to assert a "due process claim stemming from pre-indictment delay," citing criminal cases addressing such claims. DE 30 at 3-4.  In this regard, Gkanios argues that "[t]he Government's unreasonable delay in bringing the charges against [him] has prejudiced him in such a manner that it would be extremely difficult or nearly impossible for him to form a defense."  Id. at 4. Gkanios specifically claims that due to the twenty-year delay between his criminal convictions and the filing of this action, two "key" witnesses (both apparently deceased) are not available to testify:  one of the attorneys who represented Gkanios in his criminal cases and the INS officer who interviewed Gkanios.  Id.

Gkanios correctly notes that citizenship is a "treasured right" and that "'the Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship.'"  Id. (quoting Costello v. United States, 365 U.S. 265, 269 (1961)).  But Gkanios overlooks that this is a civil action to revoke his naturalization—which the Government contends he procured unlawfully—not a criminal case charging him with any punishable offense.  See Johannessen v. United States, 225 U.S. 227, 242 (1912) (explaining that the statute authorizing revocation of naturalized citizenship is not criminal in nature because it "imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct" but rather "simply deprives him of his ill-gotten privileges").  Thus, the cases cited by Gkanios involving "pre-indictment delay" are inapplicable here.

In any event, Gkanios cannot show that the delay by the Government "denied [him] fundamental fairness," since "[h]e suffered no prejudice from any inability to prove his defenses." Costello, 365 U.S. at 283.  Neither the INS officer who interviewed Gkanios nor his criminal attorney would have assisted Gkanios's defense here.  As explained in Part II.B.2 below, the details of Gkanios's naturalization process have no bearing on whether he committed unlawful and immoral acts against his stepdaughter before he was naturalized, and Gkanios may not challenge his convictions for those acts in this civil proceeding.  Further, given the Court's conclusion herein that Gkanios illegally procured his naturalization, Gkanios cannot maintain a due-process claim based solely on the Government's delay in bringing this action to revoke his citizenship. See Costello, 365 U.S. at 283-84 ("Depriving [Defendant] of his fraudulently acquired [citizenship] privilege, even after the lapse of many years, is not so unreasonable as to constitute a denial of due process." (citing Johannessen, 225 U.S. at 242-43)).

Even if Gkanios's undue-delay argument were construed as a defense of laches, it would not preclude the Government's claims against him.  Laches "cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest." United States v. Arrow Transp. Co., 658 F.2d 392, 394 (5th Cir. Unit B 1981).[4]  "When the United States acts to grant or take away the right of citizenship, it quintessentially acts in its sovereign capacity." United States v. Mandycz, 447 F.3d 951, 964 (6th Cir. 2006).  Therefore, laches does not bar this action by the Government to revoke Gkanios's naturalization. See id.  And even if a laches defense

---

[4] Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit. See Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

were available here, Gkanios could not establish it.  "Laches requires proof of (1) lack of

diligence by the party against whom the defense is asserted, and (2) prejudice to the

party asserting the defense."  Costello, 365 U.S. at 282.  Because the witnesses

Gkanios has identified would not have helped him present a valid defense here,

Gkanios has not shown the necessary prejudice for a laches defense.  See id. at 282-

83 (rejecting laches defense in denaturalization case because deceased witnesses

could not have aided defendant on material issues); see also United States v. Koreh,

59 F.3d 431, 446 (3d Cir. 1995) ("While [Defendant] makes a blanket assertion that the

delay [in bringing a denaturalization case against him] has resulted in the loss of

potential witnesses due to death, he does not identify any individual who might have

helped his defense.").[5]

For all these reasons, Gkanios has not shown that the delay in bringing this

action prevents the United States from seeking to revoke Gkanios's naturalization.

Gkanios's Motion to Dismiss is therefore denied.

**B.    Plaintiff's Motion for Summary Judgment**

**1.    Summary Judgment Standard**

The Court may grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."   Fed. R. Civ. P. 56(a).  The moving party "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying

---

[5]  Although Gkanios has also pleaded a limitations defense, there is no statute of limitations for filing an action to revoke naturalized citizenship.  See Costello, 365 U.S. at 283 ("Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud.").

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In making this determination, the Court must discern which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, in deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

### 2.    Analysis of Plaintiff's Motion

The United States may bring a civil action to revoke a person's naturalized citizenship if that naturalization was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation."  8 U.S.C. § 1451(a).  When the Government shows that naturalization was procured through these means, the court must revoke the individual's citizenship, and it lacks discretion to do otherwise. See Fedorenko v. United States, 449 U.S. 490, 517-18 (1981).  "To prevail in a denaturalization proceeding," however, "the government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt."  United States v. Koziy, 728 F.2d 1314, 1318 (11th Cir. 1984) (citations omitted).  The reason for imposing this "heavy burden" is that "American citizenship is a precious right," and "[s]evere consequences may attend its loss, aggravated when the person has enjoyed his citizenship for many years."  Costello, 365 U.S. at 269.

As detailed above in Part I.B, the Government alleges four separate counts for revoking Gkanios's naturalization on grounds that it was procured illegally or by concealment or misrepresentation.  The Court finds that the United States is clearly entitled to summary judgment on one of these grounds—that Gkanios illegally procured his citizenship because he lacked the good moral character required to naturalize, having committed unlawful acts that adversely reflected on his moral character.  Thus, the Court declines to address the other three counts in Plaintiff's Complaint.  See, e.g., United States v. Samaei, 260 F. Supp. 2d 1223, 1228 & n.11 (M.D. Fla. 2003) (granting summary judgment to Government on denaturalization claim alleging crimes of moral turpitude and therefore declining to reach second count asserting concealment and misrepresentation).

"Citizenship is illegally procured if some statutory requirement which is a condition precedent to naturalization is absent at the time the petition is granted." Koziy, 728 F.2d at 1318 (internal quotation marks omitted); see Fedorenko, 449 U.S. at 506 (emphasizing that "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship").  One of these requirements is that the applicant be "a person of good moral character" throughout the time period required by statute.  8 U.S.C. § 1427(a)(3); 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(a)(1); see 8 U.S.C. § 1430(a).  A person like Gkanios, who seeks naturalization based on marriage to a United States citizen, must meet the good-moral-character requirement starting three years before he files his naturalization application until the time he is granted citizenship.  See 8 U.S.C. § 1430(a); 8 C.F.R. § 319.1.

As relevant here, "[u]nless the [naturalization] applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character."  8 C.F.R. § 316.10(b)(3)(iii); see 8 U.S.C. § 1101(f) (final paragraph).  An applicant violates this provision if he commits the unlawful acts during the statutory period *before* he is naturalized, even if he is convicted of those crimes *after* he is granted citizenship.  See United States v. Jean-Baptiste, 395 F.3d 1190, 1193-94 (11th Cir. 2005).  The Government claims that Gkanios did not meet the good-moral-character requirement because, during the three-year period before he applied for citizenship in August 1988, he committed unlawful acts that adversely reflected on his moral character.  Specifically, in 1986 and 1987, Gkanios repeatedly raped and sodomized his underage stepdaughter—acts proven by his later convictions for those offenses.  See id. at 1194 (noting that defendant's unlawful act during statutory period was "established by his later conviction" and therefore "precluded [him] from establishing good moral character" necessary for citizenship).

Gkanios does not contest that these acts adversely reflect on his good moral character.  Indeed, there are few crimes more immoral and depraved than an adult male raping and sodomizing his minor stepdaughter.  See, e.g., United States v. Okeke, 671 F. Supp. 2d 744, 750 (D. Md. 2009) ("[S]exual abuse of a minor is a base and depraved crime that violates society's mores and values.").  Gkanios instead maintains that he is "innocent of any criminal charges," suggesting that his guilty plea to the rape and sodomy charges in Westchester County was not knowing and voluntary and that he

was wrongfully convicted of the rape charge in Putnam County.  DE 64 at 4-5.[6]  But Gkanios raised these same arguments in his criminal cases, and the New York courts rejected them.  Gkanios is thus collaterally estopped from relitigating those issues here. See Jean-Baptiste, 395 F.3d at 1194-95 (holding that collateral estoppel barred denaturalization defendant from contesting prior conviction by raising issues specifically decided in criminal case).  In any event, this civil denaturalization action is not the proper forum for Gkanios to collaterally attack his state-court convictions. Cf. Mohammed v. Ashcroft, 261 F.3d 1244, 1251 (11th Cir. 2001) (holding that permanent resident alien who had been removed from United States due to state-court convictions could not challenge those convictions in appeal of removal order).  Finally, Gkanios has not shown any extenuating circumstances regarding his culpability for the crimes and their adverse effect on his moral character.  See 8 C.F.R. § 316.10(b)(3)(iii); Jean-Baptiste, 395 F.3d at 1195.

For all these reasons, the Government has shown by clear, convincing, and unequivocal evidence that Gkanios illegally procured his citizenship because he lacked the good moral character required for naturalization.  And Gkanios has failed to demonstrate a genuine dispute of material fact on this issue, leaving no doubt that his naturalized citizenship should be revoked.  Accordingly, the Court grants Plaintiff's Motion for Summary Judgment.

---

[6]  These assertions are contained in the facts section of Gkanios's summary-judgment response.  In the argument section of the response, Gkanios does not address the Government's claims regarding the good-moral-character requirement, focusing instead on the circumstances of his naturalization application and interview.

### C.    Defendant's Motion to Exclude Expert Testimony

Gkanios's Motion to Exclude Plaintiff's Expert Testimony or Limit Expert Testimony relates to testimony by a United States immigration official concerning the procedures that the INS followed in connection with Gkanios's naturalization application and interview.  See DE 57.  These matters, however, do not pertain to the moral-character issue that the Court finds dispositive here.  The Court therefore denies Gkanios's expert-testimony motion as moot.

### III.   Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Motion to Dismiss [DE 30] is **DENIED**;

2.    Plaintiff's Motion for Summary Judgment [DE 56] is **GRANTED**;[7]

3.    Defendant's Motion to Exclude Plaintiff's Expert Testimony or Limit Expert Testimony [DE 57] is **DENIED as moot**;

4.    The calendar call scheduled for December 6, 2012, is **CANCELLED**, and the case is removed from the Court's December 10, 2012, trial calendar; and

5.    The Court will enter a separate Final Judgment in this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 29th day of November, 2012.

JAMES I. COHN
United States District Judge

---

[7]  Although Plaintiff has requested oral argument on its Motion for Summary Judgment, see DE 56 at 31, the Court finds oral argument unnecessary and therefore denies Plaintiff's request.

Copies provided to:

Counsel of record and
*pro se* parties via CM/ECF